## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **Jamsan Hotel Management, Inc.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
|  | ) | **C.A. No. 1:20-cv-11728** |
| **Laura B. ZUCHOWSKI, Director, USCIS Vermont** | ) | |
| **Service Center, Chad F. WOLF, Acting Secretary,** | ) | |
| **U.S. Department of Homeland Security;** | ) | |
| **U.S. Department of Homeland Security; and,** | ) | |
| **U.S. Citizenship and Immigration Services,** | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE AND MANDAMUS RELIEF, AND REVIEW OF AGENCY ACTION <u>UNDER THE ADMINISTRATIVE PROCEDURE ACT</u>

### INTRODUCTION

This action by Jamsan Hotel Management, Inc., Plaintiff, challenges the United Sates Citizenship

and Immigration Services', Defendant, arbitrary and capricious denial of Plaintiff's Form I-129,

Petition for Nonimmigrant Worker (H-1B petition), which sought to extend the H-1B status and

employment of Krishna Pathak, Plaintiff's long-time employee. Plaintiff seeks a declaratory

judgment declaring the Defendants' decision dated June 18, 2020 unlawful, reversing the June

18, 2020 decision, ordering Defendants to approve the Plaintiff's H-1B Petition for Ms. Pathak

effective December 3, 2019 to September 1, 2022, ordering Defendants to adjudicate the interim

H-1B Petition filed by Plaintiff on August 30, 2019 that sought an extension of Ms. Pathak's H-

1B status from September 1, 2019 to December 2, 2019, and striking Defendants' June 18, 2020

decision as unlawful and in violation of the Immigration and Nationality Act, its associated

regulations, and the Administrative Procedure Act. Furthermore, Plaintiff seeks injunctive relief against the Defendants to prevent them from taking further action on Ms. Pathak's status other than issuing the corrected decision. Plaintiff seeks action on this complaint on an emergency basis due to circumstances set forth below.

## PARTIES

1.      Plaintiff Jamsan Hotel Management, Inc. (hereinafter "Jamsan"), is a privately held, hotel management company incorporated in Massachusetts with a principal place of business at 83 Hartwell Avenue, Lexington, Massachusetts. Jamsan has legally employed Ms. Pathak as Revenue Manager since September 2016 based on an H-1B petition previously approved by Defendant, U.S. Citizenship and Immigration Services on April 28, 2017.

2.      Defendant, Laura B. Zuchowski, is sued in her official capacity as the Director of the U.S. Citizenship and Immigration Services' Vermont Service Center which is the office where the Plaintiff's immigration file may currently be located and which made the decision at issue in this case. The Vermont Service Center is located at 75 Lower Welden Street, St. Albans, Vermont.

3.      Defendant, Chad F. Wolf, is being sued in his official capacity as the Acting Secretary of the Department of Homeland Security (DHS).  In this capacity, he is charged with the administration and enforcement of the immigration laws pursuant to 8 U.S.C. §1103 and he possesses extensive discretionary powers to grant certain relief to non-U.S. citizens. More specifically, the Acting Secretary of the Department of Homeland Security is responsible for enforcing the Immigration and Nationality Act ("INA") and for approving applications for nonimmigrant visa petitions and providing foreign nationals with evidence of their legal status in the United States. The U.S. Citizenship and Immigration Services is an agency within the

Department of Homeland Security to whom the Secretary's authority has in part been delegated, and is subject to the Secretary's supervision.

4.　　　Defendants, Department of Homeland Security (hereinafter "DHS") and the U.S. Citizenship and Immigration Services (hereinafter "USCIS") are the agencies responsible for enforcing the INA and for adjudicating and approving applications for nonimmigrant visa petitions and providing foreign nationals with evidence of their legal status in the United States.

## JURISDICTION

5.　　　This action arises under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq. and the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, 28 U.S.C. § 1361, the mandamus statute, and relief under the APA. There exists between the parties an actual and justiciable controversy over which Plaintiff seeks declaratory and injunctive relief to protect its legal rights.

## VENUE

6.　　　Venue is properly with this Court pursuant to 28 U.S.C. § 1391(e) because this is a civil action in which the Defendants are employees or officers of the United States, acting in their official capacity, and involves agencies of the United States; because a substantial part of the events giving rise to the claim occurred in the District of Massachusetts; and because Plaintiff resides in the District of Massachusetts and there is no real property involved in this action. Therefore, venue is proper in this district.

## EXHAUSTION OF REMEDIES

7.     The Defendants' June 18, 2020 decision to deny Plaintiff's H-1B Petition on behalf of

Ms. Pathak constitutes a final agency action under the APA, 5 U.S.C. § 701 et seq. Neither the

INA nor DHS regulations at 8 C.F.R. § 103.3(a) require an administrative appeal of the denial.

Accordingly, the Plaintiff has no administrative remedies to exhaust. Moreover, exhaustion of

any available administrative remedies will be meaningless and ineffective given the issues in this

case and this lawsuit is the Plaintiff's only legal means to rectify the situation. The Plaintiff has

no other viable remedy or legal avenue to pursue in connection with this issue other than this

action.

## LEGAL BACKGROUND

### *H-1B Petition Process*

8.     Sections 101(a)(15)(H)(i)(b) and 214(c)(1) of the INA provide for the admission into the

United States of temporary workers sought by U.S. employers to perform services in specialty

occupations. 8 U.S.C. §§ 1101(a)(15)(H)(i)(b) and 1184(c)(1). This nonimmigrant classification

is commonly referred to as "H-1B."

9.     A "specialty occupation" is one that requires the "(A) theoretical and practical application

of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree

in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the

United States." 8 U.S.C. § 1184(i).

10.    The H-1B classification has several prerequisites a U.S. employer must meet before filing

a nonimmigrant visa petition with USCIS. Relevant here, the statute requires that the employer

file a Labor Condition Application ("LCA") for certification by the U.S. Department of Labor

("DOL"). 8 U.S.C. § 1182(n)(1). The employer makes certain attestations in the LCA which are

4

intended to ensure that the employment of an H-1B worker will not have an adverse effect on the wages and working conditions of similarly-situated U.S. workers. See 8 U.S.C.§§ 1182(n)(1)(A)-(D).

11.     In the LCA, the employer must identify the Standard Occupational Classification ("SOC") code and title for the offered H-1B position. For the Revenue Manager position that Ms. Pathak held, Jamsan consistently identified SOC code 13-1161, which is the occupational classification for Marketing Research Analysts and Marketing Specialists. To provide data to DOL that it will pay the required wage (the higher of the prevailing or actual wage) for the H-1B position, the employer may obtain a prevailing wage from a DOL online wage library, using the occupational classification, the job location and one of four wage levels depending on the employer's education and experience requirements.

12.     When the U.S. employer files the H-1B petition with USCIS, the employer must include the DOL-certified LCA. If the foreign national, like Ms. Pathak, is already in the United States in H-1B status, the petitioning employer also may designate in the petition that the foreign national is requesting an extension of stay in H-1B status.

13.     Pursuant to statute, foreign nationals who were "previously issued a visa or otherwise provided [H-1B] nonimmigrant status" can begin working for a new employer when the new employer files an H-1B petition, rather than having to wait for petition approval, provided the petition is non-frivolous and other requirements are met. See 8 U.S.C. § 1184(n). The employment authorization continues until USCIS adjudicates the petition. *Id*. During this period, the foreign national is in a "porting" status. See *id*.; 8 C.F.R. § 214.2(h)(2)(i)(H).  If USCIS approves the H-1B petition with an extension of stay, the foreign national resumes her H- 1B

status. If USCIS denies the petition, the statutory "porting" employment authorization ends. See

8 U.S.C. § 1184(n); 8 C.F.R. § 214.2(h)(2)(i)(H)(2).

14.     Pursuant to 8 C.F.R. § 274a.12(b)(20), a foreign national in H-1B status is authorized to

continue employment with their same employer for a period not to exceed 240 days beginning on

the date of their current H-1B expiration ("authorized period of stay"), provided their employer

properly and timely files an H-1B petition with USCIS.

15.     The maximum period of stay for a foreign national in H-1B status generally is limited to

six years. 8 U.S.C. § 1184(g)(4). When calculating the six years of H-1B time eligible to a

foreign national, the statute does not count time the foreign national spent physically outside the

U.S. during the H-1B period, and any such time may be recaptured in a subsequent H-1B

petition.  8 CFR § 214.2(h)(13(iii)(c).  This is commonly referred to as "recapture" time.

16.     A foreign national's H-1B status can be extended beyond the six-year maximum where

the H-1B beneficiary is at certain stages of the process toward obtaining legal permanent resident

status. An employer who wishes to permanently employ an H-1B worker may file an

employment-based immigrant visa petition on her behalf. If, as in Ms. Pathak's situation, an

immigrant visa number is not available at the time Jamsan filed the immigrant visa petition, and

continues to be unavailable to her, the beneficiary must wait for a visa number to become

available before applying for permanent resident status. 8 U.S.C. § 1255(a).

17.     In recognition of backlogs in immigrant visa number availability, Congress enacted

provisions allowing for the extension of H-1B status if the foreign national meets certain

requirements associated with the process for acquiring lawful permanent residence. Relevant

here, a beneficiary of certain employment-based immigrant visa petitions—such as that filed by

Jamsan on behalf of Ms. Pathak and approved by Defendant USCIS—who is eligible for lawful

permanent residence but for the fact that a visa number is not yet available for her visa

classification, may be granted an extension of H-1B status in up to three year increments. See

§104(c), American Competitiveness in the Twenty-First Century Act (AC21), Title 1, § 104(c),

Pub. L. 106-313 (Oct. 17, 2000); 8 C.F.R. §214.2(h)(13)(iii)(E). USCIS may grant additional

extensions in three-year increments until it adjudicates the foreign national's application for

permanent residence. *Id*.

### *H-1B Requirements*

18.     For the H-1B classification, USCIS determines whether the petitioning employer's job

qualifies as a specialty occupation and whether the beneficiary is qualified to perform the job

duties required by the specialty occupation. See 8 C.F.R. §§ 214.2(h)(4)(i)(A)(1),

(h)(4)(iii)(B)(3).

19.     The applicable regulations at 8 CFR §214.2(h)(4)(ii) define a specialty occupation as

> "an occupation which requires theoretical and practical application of a body of
> highly specialized knowledge in fields of human endeavor including, but not
> limited to, architecture, engineering, mathematics, physical sciences, social
> sciences, medicine and health, education, **business specialties**, accounting, law,
> theology, and the arts, and which requires the attainment of a bachelor's degree or
> higher in a specific specialty, or its equivalent, as a minimum for entry into the
> occupation in the United States." (emphasis added).

20.     DHS regulations further provide:

> (A)     Standards for specialty occupation position. To qualify as a specialty occupation,
the position must meet one of the following criteria:
>> (1)     A baccalaureate or higher degree or its equivalent is normally the
>> minimum requirement for entry into the particular position;
>> (2)     The degree requirement is common to the industry in parallel positions
>> among similar organizations or, in the alternative, an employer may show that its
>> particular position is so complex or unique that it can be performed only by an
>> individual with a degree;
>> (3)     The employer normally requires a degree or its equivalent for the position;
>> or

    (4)    The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4).

21.    Upon acceptance of an H-1B petition, USCIS adjudicators must also determine whether the petition is supported by an LCA which corresponds with the petition and whether the job offer named in the H-1B petition is a specialty occupation in accordance with 8 CFR §214.2(h)(4)(i)(B).  While USCIS is directed to review the LCA when making this determination in the context of adjudicating the H-1B petition, the scope of review by USCIS is very limited and must focus solely on a determination as to whether the sponsored position is a "specialty occupation." To the extent the job offered meets one or more of the four subclauses of the definition of "specialty occupation" as defined in the regulations and all other components of the petition satisfy the H-1B visa requirements, USCIS should approve the petition.

***Nonimmigrant Visa Petition Adjudication by Defendant USCIS***

22.    8 U.S.C. §1571(b) states:

"It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition."

23.    The APA requires that an agency conclude a matter presented to it "within a reasonable time." 5 U.S.C. §555(b). In order to determine what constitutes a reasonable time, the Courts will look to the following factors: (1) whether the time an agency takes to render a decision is governed by the rule of law; (2) where Congress has provided a timetable or other indication of the speed in which it expects an agency to act, then the enabling statute and statutory scheme may supply content for this rule of reason; (3) delays in the realm of economic regulation are less

tolerable when human health and welfare are at stake; (4) consideration of the effect of

expediting delayed action on agency actions of higher or competing priority; (5) the nature and

extent of the interests prejudiced by delay; and (6) the impropriety of agency lassitude is not

required to find that agency action has been unreasonably delayed. *Telecomms. Research &*

*Action Center v. FCC*, 759 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC factors").

## FACTUAL ALLEGATIONS

24.     Plaintiff Jamsan is a privately-held hotel management company and a premier lodging

solution provider based in Lexington, Massachusetts.  Jamsan has been in business since 1994

and the company currently manages more than 60 hotels in the New England region. Jamsan

directly employs 25 professionals, manages a workforce that fluctuates between 400 and 2,000,

and seeks to provide the best possible hospitality experience for guests and exceptional ROI for

its investors. The company works with many leading national hotel brands, including Marriott

International, Choice Hotels, Wyndham Hotel Group, Hilton, Sheraton, Best Western

International and the Intercontinental Hotel Group.

25.     Since September 2016, Jamsan has employed Ms. Pathak in the professional position of

Revenue Manager pursuant to an approved H-1B visa petition. For this high-level role, given the

very technical and sophisticated nature of its work, Jamsan must hire individuals with the

relevant education and experience in order to be competitive in the marketplace and properly

price and market available rooms in the myriad of online hotel room-booking platforms.

26.     As described in detail in each of Jamsan's three H-1B petitions on behalf of Ms. Pathak

to date (defined below as H-1B Petition #1, H-1B Petition #2, and H-1B Petition #3), the

position of Revenue Manager at Jamsan has consistently been described to USCIS as one that

requires, at a minimum, a bachelor's degree or higher in hospitality management or a closely related field.

*H-1B Petition #1*

27.     The beneficiary of the Plaintiff's H-1B petitions, Ms. Pathak, is a 33-year-old native and citizen of the India. Ms. Pathak came to the United States on an F-1 student visa and obtained her Master of Science degree in Hospitality – Tourism Management from the Rochester Institute of Technology in Rochester, New York in 2012.  Ms. Pathak then applied for and received an employment authorization document ("EAD") which permitted her to work in the United States under the Optional Practical Training ("OPT") for F-1 students for a one-year period following her graduation. During this one-year period, Ms. Pathak worked as a Lodging Manager and Assistant General Manager for two hotel groups, and one of her prior employers, Methuen Hospitality LLC, filed an H-1B petition on her behalf in 2013 for the role of Lodging Manager, approved by USCIS for the period October 1, 2013 – September 12, 2016.

28.     In September 2016, Jamsan sought to employ Ms. Pathak as an H-1B professional at its firm in the role of Revenue Manager.  This change of employer ("port") petition and H-1B extension request was filed with Defendant USCIS on September 9, 2016 ("H-1B Petition #1). In filing H-1B Petition #1, Jamsan described to Defendant USCIS the offered Revenue Manager position to Ms. Pathak for the period of September 1, 2016 – September 1, 2019.

29.     H-1B Petition #1 included a certified LCA that categorized the role of Revenue Manager with the SOC code 13-1161, which is for Marketing Research Analysts and Marketing Specialists. Based on the information provided to USCIS with H-1B Petition #1, including the detailed job description, Ms. Pathak's evidence of maintenance of H-1B status, evidence of her degree, and a certified LCA listing the Revenue Manager position as a job within the standard

occupational classification for Marketing Research Analysts and Marketing Specialists,

Defendant USCIS approved H-1B Petition #1 without any request for evidence.  H-1B Petition

#1 remained valid until September 1, 2019.

30.     In H-1B Petition #1, Jamsan described job duties of its Revenue Manager position, which

included: drives market share and revenue performance, ensures that all target market segments

are developed for long-term benefit of the hotel business, develops overall pricing strategy to

include all market segments and distribution channels, shares best revenue manager practices and

key learning with peers and management, produces accurate forecasts on weekly and monthly

basis, assists Regional Managers as needed in development of related marketing programs and

initiatives, and reports on weekly revenue activities in staff meetings and completes monthly and

weekly activity reports for distribution to senior leadership.

31.     In H-1B Petition #1, Jamsan described to USCIS the minimum requirements for the

position as attainment of a bachelor's degree in hospitality management or a related field.  Please

see **Exhibit A** for a copy of the support letter Jamsan included with H-1B Petition #1, describing

the offered position and minimum requirements.

*Immigrant Visa Petition*

32.     Seeking to employ Ms. Pathak on a permanent basis, Jamsan also filed a Form I-140,

Immigrant Petition for Alien Worker (I-140 Petition) on her behalf, one of several necessary

steps for her to become a permanent resident of the United States. USCIS approved Jamsan's

petition and agreed that Ms. Pathak qualified to immigrate to the United States as a member of

the professions with an advanced degree pursuant to INA §203(b)(2)(A), 8 U.S.C.

§1152(b)(2)(A). Please see **Exhibit B** for a copy of the I-140 Approval Notice.

33.     Once an immigrant visa number becomes available to her, Ms. Pathak will be able to apply to become a permanent resident.  Due to statutory limits on visa numbers, however, she will have to wait years for a visa number to become available. See 8 U.S.C. §§ 1151(d), 1152, 1153(b). For that reason, and pursuant to AC21 § 104(c) and 8 C.F.R. § 214.2(h)(13)(iii)(E), Jamsan sought to continue her employment as an H-1B worker in the interim.

### H-1B Petition #2

34.     Jamsan filed its second H-1B petition on behalf of Ms. Pathak with Defendant USCIS, seeking to extend Ms. Pathak's H-1B to her six-year maximum while awaiting approval of the I-140 Petition.  This petition ("H-1B Petition #2") was received by Defendant USCIS on Friday, August 30, 2019 and requested extension of Ms. Pathak's H-1B employment from September 2, 2019 through December 2, 2019 based on international travel Ms. Pathak had undertaken since she first gained H-1B status on October 1, 2013.

35.     The offered position in H-1B Petition #2 was also that of Revenue Manager.  H-1B Petition #2 used the same SOC code on the LCA as H-1B Petition #1, included the identical job description and minimum requirements, and similarly provided evidence of Ms. Pathak's maintenance of status and educational background. Please see **Exhibit C** for a copy of the support letter Jamsan included with H-1B Petition #2, describing the offered position and minimum requirements.

36.     By notice dated September 19, 2019, the Defendant USCIS issued a Request for Evidence in which it alleged that the Plaintiff had not met **any** of the regulatory criteria for the offered position of Revenue Manager to qualify as a specialty occupation.  The Request for Evidence provided a deadline of Sunday, December 15, 2019 to reply with the requested evidence.

37.     Jamsan timely responded to Defendant USCIS's Request for Evidence on December 12, 2019.  This 68-page response provided great detail to Defendant USCIS, describing how the offered Revenue Manager position met the criteria of an H-1B specialty occupation.  A full copy of this RFE and Jamsan's response is included as **Exhibit D**.

38.     By a preponderance of the evidence standard, Jamsan demonstrated, both in its August 2019 petition and in its December 2019 response to the Request for Evidence that the offered position of Revenue Manager meets the criteria of an H-1B specialty occupation.

39.     To date, Defendant USCIS has yet to render a decision on H-1B Petition #2.  The petition remains pending.

40.     Applying the TRAC factors to H-1B Petition #2, there is no doubt that the Defendants' delay is unreasonable. Congress has provided a timetable for adjudication and one court has held that delays in immigration adjudication implicate human welfare issues, as applicants are stuck in bureaucratic limbo and are unable to resolve serious issues in their lives regarding their futures. See, *Singh v. Still*, 470 F.Supp.2d 1064, 1070 (N.D. Cal. 2006).

41.     With regard to H-1B Petition #2, Plaintiff remains uncertain of a final decision on this petition. Without a final adjudication, Ms. Pathak does not possess an approval notice evidencing maintenance of her H-1B status for the requested timeframe, which she will need when eligible to apply for lawful permanent resident status when an immigrant visa becomes available.

### *H-1B Petition #3 – 3 Year Extension*

42.     Jamsan filed H-1B Petition #3 on behalf of Ms. Pathak, requesting extension from December 3, 2019 through September 1, 2022 and providing evidence of Jamsan's approved I-140 Petition for Ms. Pathak.  Defendant USCIS confirmed receipt of H-1B Petition #3 on November 27, 2019.

43.     The Revenue Manager position described in H-1B Petition #3 was identical to the

Revenue Manager positions described in H-1B Petition #1 and H-1B Petition #2, used the same

SOC Code in the LCA, described the exact same job duties and how the position related to Ms.

Pathak's training in hospitality and tourism.  Please see **Exhibit E** for a copy of the support letter

Jamsan included with H-1B Petition #3, describing the offered position and minimum

requirements.

44.     On April 30, 2020, Defendant USCIS issued a Request for Evidence ("RFE") in relation

to H-1B Petition #3 in which it alleged that the Plaintiff had not met **any** of the regulatory

criteria to qualify for a specialty occupation.

45.     The April 30, 2020 RFE was replete with factual errors and contradictions.  As an initial

matter, the RFE misconstrued the nature of Plaintiff's H-1B Petition #3.  Plaintiff had sought an

extension of Ms. Pathak's H-1B status and work authorization. Instead, the RFE states the

Plaintiff was seeking to classify Ms. Pathak in H-1B status.  As noted above, until the erroneous

denial giving rise to this complaint, Plaintiff had employed Ms. Pathak pursuant to an approved

H-1B petition since 2016.

46.     The RFE contained other significant errors.  For example, the RFE stated, "You indicate

that the minimum entry requirements for the proffered position are a wide variety of disparate

fields of study, as the offered position requires a bachelor's degree in hospitality management."

Jamsan had indicated, exactly as it had in its two prior H-1B petitions, that the Revenue Manager

was required to possess a degree in hospitality management or a related field. Jamsan did not

indicate that a wide variety of disparate fields would qualify.

47.     Several more erroneous references followed, wherein the RFE asked Jamsan to describe

how "each field of study listed as a qualifying field for the proffered position is directly related

to the duties and responsibilities of the position."  Again, Jamsan indicated it considered a bachelor's degree in hospitality management or a related field as qualifying.

48.     On May 12, 2020, Jamsan responded to the RFE pointing out to Defendant USCIS the errors contained in its RFE and highlighted that H-1B Petition #2 had received a similar RFE.  A copy of Jamsan's 71-page RFE Response is included as **Exhibit F**.

49.     Of note, Jamsan addressed in its response how the Revenue Manager position met three of the possible four specialty occupation criteria. To be approved, an employer need only demonstrate that a position meets any one criterion.

50.     With regard to the first H-1B specialty occupation criterion (a baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position)  Jamsan's RFE response included a letter with a more detailed description of the Revenue Manager's duties, how Ms. Pathak's education prepared her to perform those duties, the percentage of time devoted to each duty, and charts comparing how the duties correspond to the job duties listed in the O*NET for Market Research Analysts and Marketing Specialists. Plaintiff's response also included a copy of the legal disclaimer that appears on the Occupational Outlook Handbook, the reference manual USCIS adjudicators routinely consult, cautioning against it being used for any legal purpose.

51.     With regard to the second H-1B specialty occupation criterion (degree requirement is common to the industry in parallel positions among similar organizations), Jamsan provided an article from the scholarly publication the *Journal of Revenue and Pricing Management* that discussed recognition of the role of Revenue Manager and its complexity and the trend of hiring professionals like Ms. Pathak for this role, an expert opinion letter from the president of another hotel management firm, and job listings similar to Jamsan's Revenue Manager role from a

variety of hotel markets (local: Cambridge, MA, Northeast: New York, NY, nationwide: Las Vegas, NV).

52.     With regard to the last H-1B specialty occupation criterion (nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree), Jamsan referenced its detailed letter containing a bullet point list of 15 duties the Revenue Manager typically undertakes, along with charts outlining percentage of time devoted to each duty and sub-bullet points containing additional detail about the specific day-to-day tasks required to fulfill each duty.

53.     Jamsan's RFE response demonstrated by a preponderance of the evidence its offered position of Revenue Manager met three of the criteria for a specialty occupation.

54.     On June 18, 2020, the Defendant USCIS denied the Plaintiff's H-1B Petition #3 based on an erroneous determination that the Plaintiff failed to establish that its petition was supported by evidence that the position of Revenue Manager is a specialty occupation. As a result of this decision, the Plaintiff has now been deprived of Ms. Pathak's services. A copy of the decision is attached hereto as **Exhibit G**.

55.      The denial Plaintiff's petition is predicated on multiple misinterpretations and misapplications of the law and the facts by Defendant USCIS and evidences a clear disregard for its adjudicative responsibilities, which, at the most basic level, include the requirement to properly review and consider the record, and to apply the correct legal standard in the adjudicative process.

56.     Defendant USCIS is entrusted to make decisions that are not arbitrary and capricious. Its denial of Plaintiff's H-1B Petition #3 was arbitrary and capricious because it failed to

acknowledge and take into account that three years earlier USCIS had approved Plaintiff's H-1B Petition #1, which involved the same job, the same minimum requirements, and the same employee.  Employers who hire H-1B professionals for their businesses need logical, consistent adjudications from the agency. The agency cannot approve a petition one day and then deny the same petition the next.

57.     In its Decision, Defendant USCIS determined that although Ms. Pathak was qualified to perform the job duties for the Revenue Manager position, the Revenue Manager position itself is not a specialty occupation.

58.     Defendant USCIS's determination that the Revenue Manager position was not a specialty occupation is based in part on its misreading of the OOH. In its decision denying the Plaintiff's H-1B petition, the Defendant, cites the OOH as follows:

> "USCIS routinely consults the OOH for information about the educational requirements of particular occupations….the OOH does not indicate that Market Research Analysts and Marketing Specialists positions normally require a minimum of a bachelor's degree in a specific specialty. A range of educational credentials may qualify an individual to perform the duties for the position of Market Research Analysts and Marketing Specialists."

See **Exhibit G** at page 4.

59.     USCIS's reliance on the OOH for its decision to deny the Plaintiff's H-1B visa petition is entirely misplaced and an abdication of its duty to review Jamsan's petition on an individualized basis. In fact, the OOH includes a disclaimer that specifically states:

> "[T]he OOH provides a general, composite description of jobs and cannot be expected to reflect work situations in specific establishments or localities….**The OOH, therefore, is not intended to, and should never, be used for any legal purpose…..[T]he information in the OOH should not be used to determine if an applicant is qualified to enter a specific job in an occupation**." (emphasis added)

USCIS's exclusive reliance on a resource that disavows its legal relevance and connection to the H-1B process is arbitrary and capricious.

60.     Furthermore, Director Zuchowski's reliance on the OOH violated DHS's own regulations on the procedure for determining whether a position qualifies as a specialty occupation.  In adopting the regulation governing the H-1B program, the agency made clear that "an approved LCA is not a factor in determining whether a position is a specialty occupation."  Rather, USCIS was required to make the specialty occupation determination "on a case-by-case review of the position." 56 Fed. Reg. 61111, 61112 (Dec. 2, 1991).

61.     Here the Director failed to undertake an individualized review of Plaintiff's Revenue Manager position. Instead, the Director relied exclusively on Plaintiff's LCA and found that the Market Research Analyst and Marketing Specialist occupation was not a specialty occupation. The Director's review of the Market Research Analyst and Marketing Specialist occupation was irrelevant and flouted her duty to determine whether Plaintiff's Revenue Manager position qualified as a specialty occupation.

62.     Notwithstanding Defendants' misguided reliance on the OOH, the Defendant actually misreads and misapplies the OOH. The OOH clearly states that the typical entry level education for Market Research Analysts and Marketing Specialists is a bachelor's degree.  The fact that the OOH then lists a wide variety of degrees Market Research Analysts and Marketing Specialists may hold is irrelevant. The OOH accurately reflects real-life business settings where Market Research and Marketing Specialists may have a variety of degrees depending on the industry in which they work, such as a pharmaceutical company seeking a Market Research

Analyst with a background in pharmacy or life sciences, or a hotel management company seeking a Revenue Manager with a background in hospitality management.

63.     Thus, to the extent it is even appropriate for USCIS to reference the OOH when evaluating specialty occupations in the H-1B context, it is incumbent on the agency to correctly interpret the resource. It is further incumbent on the agency to correctly read and interpret the evidence provided by the Plaintiff to support its legal position. Defendants failed in this regard. As such, the Defendant USCIS's actions were unlawful and in violation of the APA § 706, 5 U.S.C. § 706.

64.     The Plaintiff provided an expert opinion signed by a seasoned professional in the hotel management field which detailed why a bachelor's degree in hospitality management or a related field is minimum requirement for the Revenue Manager position and clearly explains how the position offered by the Plaintiff meets the statutory and regulatory definition of a specialty occupation. In its decision, Defendant USCIS states the expert "did not provide documentation to verify that their respective company routinely employ [sic] bachelor's degree recipients to perform the duties of a Revenue Manager."

65.     The RFE stated, for purposes of the types of evidence Jamsan might consider providing to prove this criterion:

> "Copies of letters or affidavits from firms or individuals in the industry attesting that similar organizations routinely employ and recruit only individuals with a bachelor's degree or higher in a specific specialty or its equivalent for parallel position. Any letter or affidavit should be supported by documentation of the following: - the writer's qualification as an expert; how the writer's conclusions were reached; and, the basis for the writer's conclusions, supported by copies or citations of any materials used."

66.     Defendants USCIS's assessment of the expert advisory opinion letter is both arbitrary and capricious. The Plaintiff's additional documentation of a professional journal article and similar

job postings, along with a copy of the expert's C.V. bolsters the expert opinion letter and

confirms well beyond a preponderance of the evidence that the intended beneficiary's education

relates directly to the work being performed and that the specific duties of the Revenue Manager

position are so complex that a bachelor's degree in hospitality management is required for the

position.

67.     With regard to the job postings Jamsan provided in response to the RFE, each of which

was for a similar Revenue Manager position with hotels of varying sizes and markets, and all of

which indicated the positions required a bachelor's degree in hotel management or a related

field, Defendant USCIS stated:

> "Overall, the job postings suggest that although a bachelor's degree is required for
> most of these positions, a bachelor's degree in a specific specialty or its equivalent
> is not. Thus, these postings do not establish that your industry requires the
> expertise of someone holding at least a bachelor's degree in a specific specialty to
> perform job duties similar to those of the offered position. It should be noted that
> even if all of the job postings had indicated that a bachelor's degree or higher in a
> specific specialty or its equivalent were required, the record does not establish
> that the submitted announcements are for parallel positions in similar
> organizations in the same industry. For instance, the job postings are for positions
> in different industries and dissimilar organizations and thus, cannot be found to be
> parallel positions. Further, due to the generalized nature of the offered position
> job duties, compared to the advertised position duties, USCIS is unable to discern
> whether the offered position is parallel to any positions within similar
> organizations in its industry."

Defendant's statement is clearly contradicted by the record.  Defendant decision acknowledges

that Jamsan had provided a detailed job description and that each job posting was from a hotel

which sought revenue managers with at least a bachelor's degree in hotel management or related

field.  It is incumbent on the agency to correctly read and interpret the evidence provided by the

Plaintiff to support its legal position, but the Defendant failed in this regard. As such, the

Defendant USCIS's actions were unlawful and in violation of the APA § 706.

68.     With regard to the specialized and complex nature of the Revenue Manager position,

detailed in the H-1B support letter and RFE response with a bullet-point list of 15 typical duties,

percentage of time devoted to each duty, further sub-bullets of additional detail to describe the

day-to-day duties that the Revenue Manager undertakes to accomplish each task, accompanied

by a chart containing this information and an additional chart of coursework Ms. Pathak

completed in her hospitality management degree related to each task, Defendant USCIS's

Decision stated:

> "Due to the lack of detail in the description you have provided, it cannot be
> determined that these duties would require the theoretical and practical
> application of a body of highly specialized knowledge, and the attainment of a
> bachelor's degree in a specific specialty as a minimum for entry into the
> position."

69.     Defendant USCIS failed to read and interpret the evidence provided by Plaintiff to

support its legal position with regard to the specialized and complex nature of the Revenue

Manager position.  As such, Defendant USCIS's actions were unlawful and in violation of the

APA § 706.

70.     Defendant USCIS's decision failed to properly interpret the Plaintiff's evidence and

applied an erroneous legal standard in the adjudicative process. The Plaintiff's evidence proved

that in order to be a Revenue Manager at Jamsan the employee must possess at minimum a

bachelor's degree in hospitality management or a related field. Jamsan's educational

requirements for the Revenue Manager position are not general and wide-ranging degrees.  A

single, specific degree is clearly a degree requirement in a specific specialty that directly relates

to the duties and responsibilities for the Revenue Manager position.  The USCIS decision to deny

the Plaintiff's H-1B petition based on lack of a degree in a specific specialty or its equivalent is

both arbitrary and capricious.

71.     In light of the fact the applicable USCIS regulation in 8 CFR §214.2(h)(4)(ii)

specifically names "business specialties" as a clear example of an occupational category

that always satisfies the criteria of a specialty occupation, if it is determined that the

Revenue Manager position corresponds to the occupational category of business

specialty, it necessarily follows that such position is eligible for the H-1B classification as

a "specialty occupation."

72.     Due to the erroneous denial of the Plaintiff's H-1B visa petition, as of the date of the

Decision Ms. Pathak is not permitted to work in the United States, and the Plaintiff has been

deprived of Ms. Pathak's services. Jamsan has been forced to seek temporary replacements and

reallocate assignments within the team, as Ms. Pathak's role continues to be critical to the

organization.  As a result of the Defendants' actions, the Plaintiff has suffered considerable

financial loss and disruptions to its business.

73.     This Denial has also left Ms. Pathak without lawful status in the U.S. Further, she has

been unable to promptly return home to India, as flights are few and far between due to the

COVID-19 pandemic, available flights are prohibitively expensive, and upon arrival, Ms. Pathak

would be required to complete a mandatory quarantine in government-run facilities.

Additionally, even if she did return home and Jamsan filed a new H-1B petition on her behalf,

she would face substantial obstacles in securing a visa stamping appointment abroad at this time,

due to both closures of the U.S. Embassies and consulates abroad during the COVID-19

pandemic and the current administration's recent proclamations that restrict issuance of new H-

1B visas abroad through the end of this year.  This would mean several more months where the

Plaintiff would continue to be deprived of Ms. Pathak's employment and she would be deprived

of her livelihood.

## COUNT ONE

### Violation of the Administrative Procedure Act

### 5 U.S.C. § 701, et seq.

74.     The Plaintiff realleges and incorporates herein by reference, as if fully set forth herein, the allegations in paragraphs 1 - 73 above.

75.     The Plaintiff is entitled to review of Defendants improper denial of its H-1B petition by this Court pursuant to 5 U.S.C. §§ 701-706.

76.     A reviewing court shall "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

77.     The Defendant USCIS erroneously denied the Plaintiff's H-1B petition #3 solely on the ground that the evidence in the record was insufficient to establish that Plaintiff Jamsan's Revenue Manager position is in a specialty occupation.

78.     Plaintiff Jamsan submitted evidence demonstrating that the position satisfied three of the four possible regulatory criteria for demonstrating a specialty occupation. 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4).

79.     Defendant USCIS failed to properly consider and interpret all evidence, misread the voluminous documentation in the Plaintiff's response to the RFE, including misreading the relevant OOH and O*Net entries, misconstrued the governing regulations, ignored Plaintiff's and Ms. Pathak's legitimate reliance interests, and erroneously concluded that the Plaintiff Jamsan had not demonstrated that the Revenue Manager position fell within a specialty occupation. In so doing, the Defendant violated its duty to properly adjudicate Plaintiff's H-1B Petition #3.

80.     Defendant USCIS's denial of the Plaintiff's H-1B petition is arbitrary and capricious.

Under 5 U.S.C. §§ 702 and 704, the Plaintiff has suffered a "legal wrong" and has been

"adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

81.     The damage to the Plaintiff is irreparable. This lawsuit presents the only viable solution

to the Plaintiff's problem.  The Plaintiff seeks preliminary injunctive relief to prevent further

action by the Defendants on this case until such time as the court can rule on the merits of the

Plaintiff's claim.

82.     As a direct result of the Defendant USCIS's decision the Plaintiff has lost the benefit of

Ms. Pathak's services. To the extent relief as requested in this Complaint is not granted, the harm

to the Plaintiff is irreparable. The Plaintiff is entitled to a declaratory judgment approving its

petition for Ms. Pathak, reinstating her H-1B status from December 3, 2019 – September 1,

2022. The Plaintiff requires this approval immediately so that Ms. Pathak can return to work.

83.     Ms. Pathak is currently without lawful status and after 180 days without lawful status is

at risk of triggering a three year bar for re-entry to the U.S. when she next departs, hence the

emergency request for a hearing on this matter.

84.     The Defendants, in violation of the Administrative Procedures Act, 5 U.S.C. § 701 et

seq., have unlawfully and unreasonably denied the Plaintiff's H-1B petition #3. The Defendants

have failed to properly carry out the adjudicative functions delegated to them by law with regard

to the Plaintiff's petitions. The Plaintiff is entitled to evidence of Ms. Pathak's valid H-1B status

and now seeks a Court order requiring the Defendants to provide such evidence. The Plaintiff

also requests a declaratory judgment confirming H-1B Petition #3 was improperly denied and

further seeks preliminary injunctive relief to prevent the Defendants from taking any adverse

action on this case inconsistent with the approval of the Plaintiff's petition for the period

requested.

## COUNT TWO

### Violation of the Administrative Procedure Act

### 5 U.S.C. § 701, et seq.

85.     The Plaintiff realleges and incorporates herein by reference, as if fully set forth herein,

the allegations in paragraphs 1 - 73 above.

86.     The Administrative Procedures Act provides that a reviewing court may compel agency

action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

87.     Mandamus is an appropriate remedy whenever a party demonstrates a clear right to have

an action performed by a governmental official who refuses to act.

88.     Defendants have willfully and unreasonably delayed in, and have refused to, adjudicate

the Plaintiff's I-129 Petition and extension of status for Ms. Pathak for the period September 2,

2019 – December 2, 2019, thereby depriving the Ms. Pathak of a clear record of her continuous

work authorization in the U.S., and potentially jeopardizing her eligibility for Adjustment of

Status in the United States.

89.     Defendants owe Plaintiff a duty to adjudicate the Petition and extend the status of Ms.

Pathak as requested and have unreasonably failed to perform that duty.

90.     No exhaustion requirements apply to Plaintiff's Complaint. Plaintiff is owed a duty to

have the I-129 Petition including extension of status adjudicated and has no other adequate

remedy available for the harm it seeks to redress.

91.     USCIS is legally required to make a decision on the I-129 Petition including Plaintiff's

extension of status request, and such a decision is only a ministerial act. Since the Plaintiff is

only asking for a decision, the only remaining issue is whether the Defendants' delay is reasonable.

92.     Plaintiff does not bring this action asking the court to set agency-wide timelines for Defendant USCIS, but to assure that Defendant USCIS not be left with unfettered discretion in the dispensing of a non-discretionary duty. Plaintiff asks this Court to reject the idea that "time" alone, should be the sole gauge of whether the delay has been reasonable. Rather, Plaintiff asks the Court to decide whether the delay in this case is reasonable based on the history with which Defendant USCIS has treated and handled the Plaintiff's matter.

93.     Given 8 U.S.C. §1571(b) states "… a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition," this court should find that the delay in this case is not reasonable.

## PRAYERS FOR RELIEF

WHEREFORE the Plaintiff respectfully prays that this honorable Court enter an order:

(a)     accepting jurisdiction over this matter;

(b)     compelling the Defendants to take all appropriate action to adjudicate the Form I-129, Petition for a Nonimmigrant Worker and extension of status filed by Plaintiff on behalf of Ms. Pathak for the period September 2, 2019 – December 2, 2019 without further delay;

(b)     temporarily restraining and enjoining the Defendants from taking any action against the Plaintiff inconsistent with approval of the Plaintiff's petition to approve Ms. Pathak's H-1B status effective December 3, 2019 through September 1, 2022 and to permanently restrain and enjoin the Defendants from revoking or otherwise denying Ms. Pathak her nonimmigrant status as requested;

(c)      declaring that the Defendants denial of Jamsan's H-1B visa petition for Ms. Pathak was arbitrary, capricious, and unlawful and ordering the Defendants to correct the determination by issuing an approval of Ms. Pathak's H-1B status effective December 3, 2019 through September 1, 2022;

(d)      requiring Defendants to provide the Plaintiff with evidence of Ms. Pathak's H-1B nonimmigrant status by producing the required approval notice(s);

(e)      award the Plaintiff all costs and reasonable attorney's fees associated with this matter; and,

(f)      granting such other relief at law and in equity as justice may require.

Respectfully submitted, Jamsan Hotel Management, Inc.

By its attorneys,

/s/ Jennifer A. McGill
Jennifer A. McGill (BBO 687486)
Iandoli Desai & Cronin P.C.
38 Third Ave, Suite 100
Boston, MA 02129
(617) 482-1010
mcgill@iandoli.com


/s/ Prasant D. Desai
Prasant D. Desai. (BBO # 561258)
Iandoli Desai & Cronin P.C.
38 Third Ave, Suite 100
Boston, MA 02129
(617) 482-1010
Desai@iandoli.com

## <u>LIST OF EXHIBITS</u>

Exhibit A – Jamsan H-1B Support letter for H-1B Petition #1
Exhibit B – I-140 Approval Notice
Exhibit C – Jamsan H-1B Support letter for H-1B Petition #2
Exhibit D – Jamsan Response to Request for Evidence for H-1B Petition #2 (remains pending)
Exhibit E – Jamsan H-1B Support letter for H-1B Petition #3
Exhibit F – Jamsan Response to Request for Evidence for H-1B Petition #3
Exhibit G – Defendant USCIS's Denial Decision for H-1B Petition #3